**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JENNIFER M.,

                Plaintiff,

   v.   1:21-CV-980 (GTS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
NATASHA OELTJEN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, Senior United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on June 27, 2019 (Administrative Transcript ("T") 20, 261), and protectively filed for Supplemental Security Income ("SSI") on November 19, 2019. (T. 20). Plaintiff's applications were denied initially on September 12, 2019 (T. 105), and upon reconsideration on February 12, 2020. (T. 179, 191). On October 21, 2020, Administrative Law Judge ("ALJ") Andrew Soltes, Jr., conducted a hearing during

which plaintiff and vocational expert ("VE") Dennis King testified. (T. 43-86).[1] Plaintiff was represented by attorney Alan Karmazin during the hearing (T. 43), which was conducted virtually by telephone, with the consent of the plaintiff, because of the COVID-19 pandemic (T. 45). On November 16, 2020, the ALJ issued a decision denying plaintiff's claims (T. 20-29), which became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 28, 2021. (T. 6-8).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

---

[1] During the hearing, the ALJ agreed to allow plaintiff's mother to sit next to her during the hearing, as long the mother did not provide the plaintiff with any information or interrupt the hearing. (T. 49-51). The plaintiff agreed to the ALJ's terms and her mother virtually attended the hearing. (*Id.*).

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was thirty-five years old on the date of the administrative hearing and at the time of the ALJ's decision. (T. 29, 43, 52). She graduated from high school in the

special education program and attended "Vo Tech." (T. 55). She has a documented learning disability in the areas of language arts and math, and her intellectual functioning was in the borderline range. (T. 68-70, 396, 398, 400). She attended BOCES for childcare training but was unable to pass the certification exam, despite reportedly doing well in the classes. (T. 402). Plaintiff resides in Clifton Park with her mother. (T. 52).

Plaintiff engaged in prior work as an assistant teacher at a daycare facility and as a nanny. (T. 56-59). While working at the daycare facility in 2007, a child pushed her and her head hit a tree. (T. 409, 577). This incident caused plaintiff to suffer a neck injury, although a CT scan performed one day after the incident did not show anything. (T. 409).

Plaintiff left the daycare facility after the incident and worked as a nanny until she was in a car accident that exacerbated her previous neck injury. (T. 56-57, 409). She intended to return to her prior position as a nanny, but the position was no longer available when she finished recovery. (T. 57-58). She also briefly worked for three months as a cafeteria worker, but needed to leave because of medical restrictions associated with her ability to lift. (T. 617).

Plaintiff testified that she still has neck pain and could not work, primarily due to issues with her neck and arms. (T. 60-62). She also has difficulty "learn[ing] stuff new," and her mother helps her with activities like reading and using credits cards. (T. 61, 68-69, 71). She has a driver's license, but is unable to drive without her mother's help because she cannot turn her head without turning her whole body. (T. 54).

Plaintiff testified that she cannot lift over ten pounds and has trouble raising her arms over her head. (T. 62-63, 73). Plaintiff can stand and walk for up to an hour before her neck locks up. (T. 64). At the time of the hearing, plaintiff was taking a natural muscle relaxer and was not on any other medication, other than the occasional use of over the counter pain medication, Bayer aspirin. (T. 62). Plaintiff further testified that she ices and heats her neck four times a day, each session lasting forty minutes. (T. 70).

There is a substantial amount of medical evidence in the administrative record. Rather than reciting that evidence at the outset, I will discuss the relevant materials in connection with my analysis of plaintiff's claims.

## IV. THE ALJ'S DECISION

The ALJ first determined that plaintiff met the insured status requirements for DIB through December 31, 2014. (T. 22). The ALJ then found, at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 1, 2009. (T. 22). Next, the ALJ found that plaintiff has the following severe impairments: cervical dysfunction/degenerative disc disease, obesity, learning disorder, anxiety disorder, and depressive disorder. (T. 22). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 23).

At step four, the ALJ found that plaintiff had the residual functional capacity

("RFC") for sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[2] with the following additional limitations:

> [S]he requires the ability to alternate between sitting and standing at will (while remaining on task during the sit/stand period), should avoid overhead reaching but can frequently reach in all other directions, should avoid constant, repetitive twisting and turning of the neck over the course of an 8 hour workday, should avoid using heavy machinery, including motor vehicles for work purposes, can occasionally stoop and crouch, can never kneel, crawl, climb ladder/ropes/scaffolds, or work from unprotected heights, and is limited to unskilled, low stress occupations, defined as jobs involving simple, routine tasks, basic work-related decisions, rare changes in the workplace setting, and occasional interaction with the public, co-workers, and supervisors.

(T. 24). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded the "the evidentiary record as a whole is consistent with the residual functional capacity set forth above and is inconsistent with the degree of limitation alleged." (T. 24).

In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 24). The ALJ further noted that he considered "the medical

---

[2] The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3.

opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 404.1520(c) and 416.920(c). (*Id.*)

The ALJ then determined that plaintiff was unable to perform any of her past relevant work. (T. 27-28). The ALJ relied upon the VE testimony, and found that "considering the [plaintiff]'s age, education, work experience, and residual functional capacity, the [plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 29). Accordingly, the ALJ ruled that plaintiff was not disabled from the alleged onset date of March 1, 2009, through the date of the ALJ's decision. (T. 29).

## V.     ISSUES IN CONTENTION

Plaintiff raises one argument:

The ALJ's RFC is unsupported by substantial evidence because she failed to properly evaluate the opinion of Dr. Gulyas and provided flawed reasoning for discounting the opinion.

(Pl.'s Br. at 1, 6, Dkt. No. 14). Specifically, plaintiff argues that the ALJ erred by not adopting the opinion of treating chiropractor, Dr. Gulyas, that plaintiff could not work for more than four-hours in an eight-hour workday. (Pl.'s Br. at 8-13). The Commissioner contends that the ALJ's analysis of the medical opinion evidence, and his ultimate RFC determination, were not tainted by legal error and were supported by substantial evidence. (Def.'s Br., Dkt. No. 18). For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## VI.  RFC/EVALUATING MEDICAL EVIDENCE

### A.  Legal Standards

#### 1.  Weight of the Evidence

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(d) and 416.927(d), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853; 20 C.F.R. § 404.1520c(b)(2); *see also Howard D. v Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Howard*, 2021 WL 1152834, at *11.  "If the ALJ fails adequately to explain the supportability or consistency factors, or bases [their] explanation upon a misreading of the record, remand is required."  *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, No. 19-CV-4630, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Howard*, 2021 WL 1152834, at *12 (observing "courts have remanded where an ALJ did not adhere to the regulations") (collecting cases).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant ... objective medical evidence

and supporting explanations," the "more persuasive" it will be. 20 C.F.R. § 404.1520c(c)(1); *Carmen M. v. Comm'r of Soc. Sec.*, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations."). Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *Galo G. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1011(FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### 2. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

11

activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d at 361; *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical

12

facts, and nonmedical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### B.     Analysis

Dr. Joseph S. Gulyas provided chiropractic care to plaintiff between May 2007 and June 2020.  (T. 429-552, 609-11, 628-41).  The only aspect of Dr. Gulyas's findings that was rejected by the ALJ, was the chiropractor's specific opinion, in June 2019 and August 2020, that the plaintiff was unable to work for more than four hours during an eight-hour workday.[3]  (T. 25, 582, 629).  The ALJ found that this opinion was not "at all persuasive as it is not corroborated by any of the other multiple medical source opinions of record and is even undermined by Dr. Gulyas'[s] own prior assessments of only 20% to 37% temporary impairment." (T. 25, 432, 437, 438).[4]

---

[3] In his RFC, the ALJ essentially incorporated the other limitations articulated by Dr. Gulyas in 2019 and 2020, which were the most restrictive limitations reflected in the record.  (T. 24, 25, 582, 629).  The ALJ's modified sedentary work RFC incorporated Dr. Gulyas's ten pound limit on lifting; the plaintiff's need to alternate between sitting and standing at will (reflecting Dr. Gulyas's limitations on prolonged sitting and standing); the limitation on overhead reaching; and plaintiff's need to avoid repetitive twisting and turning of the neck.  (*Id*.)

[4] Although not mentioned by the ALJ, chiropractors are not "acceptable medical sources." *Patricia S. v. Kijakazi*, No. 3:20-CV-1609, 2022 WL 819561, at *3 (D. Conn. Mar. 18, 2022); 20 C.F.R. §§ 404.1502(a), 416.902(a) (defining "acceptable medical source").  "'[U]nder the new regulations [applying to evaluation of medical evidence], all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions[.]'  [However,] the ALJ is not required to give controlling weight [to a chiropractor's] opinion, and he can properly discount [that opinion] if [the ALJ's] conclusion is supported by substantial evidence." *Patricia S.*, 2022 WL 819561, at *3 (citations omitted) ("[T]he ALJ did not improperly discount the chiropractor's opinion").  Even under the prior regulations, "other sources" like a chiropractor, "cannot establish the existence of a medically determinable impairment . . . [but] may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Wood v. Comm'r of Soc. Sec.*, No. 1:18-CV-553, 2019 WL 4059017, at *5 (W.D.N.Y. Aug. 28, 2019) (citing SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006)).

Plaintiff argues the ALJ failed to adequately to explain how he considered the supportability and consistency factors in evaluating Dr. Gulyas's opinion regarding plaintiff's inability to work more than four hours per workday. (Pl.'s Br. at 7). The court concludes that the ALJ fulfilled the obligation, set forth in SSA regulations, that Dr. Gulyas's opinion be evaluated in terms of the factors identified in 20 C.F.R. § 404.1520c(c).

With respect to the consistency factor, the ALJ detailed how Dr. Gulyas's opinion about plaintiff's inability to work for more than four hours per day was inconsistent with the other medical evidence. In April 2012, a treating source, Rick Varone, RPA-C, noted that a recent MRI of plaintiff's cervical spine was 100% normal and advised that surgical intervention for plaintiff's neck pain was not indicated. (T. 25, 407). In March 2012, Worker's Compensation examiner Dr. Kercull found the plaintiff was capable of working full time. (T. 556). In July 2013, after plaintiff's car accident earlier that year, Dr. Kercull opined that her causally related disability was "mild and temporary." (T. 25, 570).

After a physical examination of plaintiff on January 22, 2020, consultative examiner Dr. Porto found that plaintiff had only mild to moderate limitations for prolonged head turning or neck bending, and did not identify any further limitations on her ability to sustain physical activity. (T. 25, 626). After reviewing the available medical records, state medical consultant, Dr. Abueg evaluated plaintiff's physical RFC and found, as of January 20, 2020, that she "was capable of sustaining the demands of light work." (T. 26, 126-27).

Although it is less relevant in evaluating Dr. Gulyas's opinion regarding the extent to which plaintiff's physical condition limited her ability to work a full day, the ALJ considered the conflicting evidence regarding plaintiff's mental limitations on her ability to perform sustained work. Psychiatric consultative examiner Dr. Cameron found, in January 2020, that plaintiff had a "moderate to marked" limitations in sustaining concentration and pace and in maintaining "an ordinary routine and regular attendance in work." (T. 26, 620). However, after reviewing all the then-available medical evidence, including Dr. Cameron's report, state medical consultant T. Bruni, Ph. D., opined that plaintiff's ability to maintain attention and concentration for extended periods was only moderately limited, and that plaintiff had no significant limitations in her ability to perform activities within a schedule, maintain regular attendance and punctuality, and sustain an ordinary routine without special supervision.

As discussed further below, based on the substantial evidence standard of review, the ALJ is accorded substantial deference in weighing conflicting medical evidence. The ALJ accounted for functional limitations associated with moderate difficulties with concentration, pace, social interaction, and maintaining a regular schedule by limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions. *See, e.g., Benjamin C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-872 (ATB), 2022 WL 16571699, at *10 (N.D.N.Y. Nov. 1, 2022) (collecting cases, including *Michael C. v. Berryhill*, No. 17-CV-1395 (DJS), 2019 WL 1228553, at *5-6, (N.D.N.Y. Mar. 15, 2019) (holding that the ALJ properly accounted for the claimant's moderate limitations in maintaining a regular schedule by "providing RFC

limitations such as 'simple, repetitive instructions' and limiting the amount of judgment and changes in the work setting").

The ALJ found that the plaintiff's acknowledged activities of daily living indicated higher functioning than her allegations of disability. (T. 24). For example, plaintiff "acknowledged the ability to perform her self-grooming, help with cooking and general cleaning, go shopping in public stores (she goes with someone she knows to reduce anxiety), attend appointments, drive, use a computer, walk for exercise, read recreationally, participate in a bible study, and do scrapbooking." (T. 24). The ALJ also determined the plaintiff's allegations were undermined by her "conservative physical treatment history, and lack of mental health treatment history, inconsisten[cy] with the clinical and objective medical evidence of record, and direct[] contradict[ion] by the more persuasive medical opinion evidence of record." (T. 27).

With respect to the supportability factor, the ALJ did discuss how Dr. Gulyas's opinion about plaintiff's inability to sustain work during an eight-hour workday was inconsistent with other findings that the chiropractor made. The ALJ stated that Dr. Gulyas's four-hour limitation was "undermined by Dr. Gulyas's own prior assessments of only 20% to 37% temporary impairment." (T. 25). Plaintiff argues that it is unclear how Dr. Gulyas's opinions are contradicted by his prior assessments. (Pl.'s Br. at 9). However, it is clear to the court that the ALJ was inferring that a 20% to 37% temporary impairment would not rise to the level of inability to work for more than four hours–50% of a normal workday. When the ALJ referred to the four-hour limitation, immediately followed by the assertion that the prior assessments completed

16

by Dr. Gulyas undermined this limitation, he created a logical bridge between the evidence and the conclusion. *Hamedallah ex rel. E.B. v Astrue*, 876 F. Supp 2d. 133, 142 (N.D.N.Y. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). The ALJ also noted that, on February 9, 2009, before the plaintiff's alleged onset date, Dr. Gulyas opined that plaintiff was "not able to work at this time," suggesting a temporary disability. (T. 25, 611).[5]

In support of her argument that the ALJ should have found Dr. Gulyas's opinion more persuasive, plaintiff has identified references in the treatment record to reports that the plaintiff had symptoms of "pain, headaches, fatigue, and dizziness." (T. 429-52, 610, 907). The plaintiff asserts that an off-task allowance is a "logical limitation" connected to those symptoms. (Pl.'s Br. at 8).

The court recognizes that the ALJ did not make extensive citations to Dr. Gulyas's treatment notes in discussing his opinion. However, the ALJ noted his reliance on the relevant regulations for evaluating medical opinion evidence (T. 24), and his implicit consideration of the supportability factor is evident from his decision. *See, e.g., John W. v. Kijakazi*, No. 5:20-CV-1180 (BKS), 2022 WL 768672, at *13 (N.D.N.Y. Mar. 14, 2022) (even if "the ALJ did not use the words supportability or consistency in the analysis, this omission does not warrant remand where, as here, the ALJ expressly relied on the proper regulations, (. . . 20 CFR 404.1520c and 416.920c . . .)), and, more importantly, the ALJ's analysis of the . . . [o]pinion shows consideration

---

[5] The ALJ's opinion cites Dr. Gulyas's February 2009 report as Exhibit 9F at 2, but the referenced document actually appears, in the administrative record, at Exhibit 10F at 2. (T. 25).

17

of those factors"); *Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 421 (S.D.N.Y. 2022) (ALJ statement that "there is no explanation offered" to support doctor's opinion that plaintiff had marked limits in maintaining a schedule complied with SSA regulations by evaluating the supportability of the opinion). The fact that the ALJ's RFC determination accounted for the other key limitations which Dr. Gulyas identified, but other medical sources did not, indicates that the ALJ carefully considered the chiropractor's treatment records and recognized those limitations supported by the chiropractor's clinical findings.[6]

While the court notes that the ALJ's discussion of his rejection of Dr. Gulyas's four-hour work limitation is not expansive, it is legally sufficient. The ALJ's explanation for his evaluation of the chiropractor's opinion was significantly more substantive than those provided in the cases cited by plaintiff, where the ALJs provided only a general reference to the record as the basis for their conclusion. (*See* Pl.'s Br. at 9). For example, in *Danette Z. v. Commissioner of Social Security*, 1:19-CV-1273 (ATB), 2020 WL 6700310, at *7 (N.D.N.Y. Nov. 13, 2020), the ALJ failed to explain his conclusion on conflicting medical evidence where he provided only the "vague and conclusory statement" that one opinion was "supported by [that physician's] review of the record." In *Darla W. v. Commissioner of Social Security*, 5:20-CV-1085 (TWD), 2021 WL 5903286 at *5, 8 (N.D.N.Y. Dec. 14, 2021), the ALJ stated that the doctor's

---

[6] "In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion." *Christina M.F. v. Berryhill*, No. 5:17-CV-0840 (GTS), 2019 WL 147463, at *6-7 (N.D.N.Y. Jan. 9, 2019) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.")).

medical opinions were "neither inherently valuable nor persuasive under the Regulations for numerous reasons (20 CFR 404.1504; 20 CFR 404.1520b(c))," while the court found that the cited regulations did not apply to the doctor's opinion.

Plaintiff's issues regarding the evaluation of Dr. Gulyas's opinion are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's physical impairments. "In general, under the substantial evidence standard of review, it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position . . . . Plaintiff must [instead] show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record." *Jonathan S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1177, 2022 WL 44700, at *6 (W.D.N.Y. Jan. 5, 2022); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). In this case, the plaintiff has not made such a showing.

Accordingly, the ALJ's decision demonstrates appropriate consideration of Dr. Gulyas's opinion in light of his own treatment notes, the longitudinal medical record, plaintiff's activities of daily living, and plaintiff's own assessment of her abilities, as reflected in her hearing testimony. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered treating source opinion where the opined limitations were inconsistent with the doctor's own treatment notes and plaintiff's self-reported activities of daily living) (summary order); *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding no error where ALJ

discounted treating source opinion that was inconsistent with treatment notes, other medical opinion evidence, and reported activities) (summary order).  The ALJ's RFC determination that plaintiff could perform modified, sedentary work during the relevant time period was supported by substantial evidence, and was not tainted by any legal error in connection with the ALJ's consideration of the medical opinion evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: November 18, 2022

*Andrew T. Baxter*
Andrew T. Baxter
U.S. Magistrate Judge